**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 23-cv-02272-NYW

D.G.P.,[1]

     Plaintiff,

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2]

     Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This civil action arises under Titles II and XVI of the Social Security Act (the "Act") for review of the final decision of Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED** for an immediate award of benefits.

### BACKGROUND

In this action, Plaintiff D.G.P. challenges the Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff applied for DIB and SSI on August 26, 2013. [Doc. 9-5 at 126].[3]

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using her initials only.

[2] Pursuant to Rule 25(d) and 42 U.S.C. § 405(g), Commissioner Martin O'Malley is automatically substituted for former Acting Commissioner Kilolo Kijakazi as the Defendant in this case.

[3] When citing to the Administrative Record, the Court utilizes the docket number assigned by the Case Management/Electronic Case Files ("CM/ECF") system and the page

Plaintiff alleged that she is disabled, and therefore unable to work, due to the following conditions:  bilateral carpal tunnel in both wrists; trigger finger in her thumbs; trigger digit in her right middle finger; massive nerve damage in both hands; sciatic nerve pain; osteoarthritis; high blood pressure; high cholesterol; possible lupus; and muscle spasms. [Doc. 9-3 at 52].  D.G.P. initially listed her disability onset date as December 15, 2012, [Doc. 9-5 at 129], which was later amended to June 23, 2014, [Doc. 9-8 at 682–83].

The Social Security Administration ("SSA") denied Plaintiff's request for benefits on January 22, 2014, [Doc. 9-4 at 74], and after a hearing before an administrative law judge ("ALJ"), *see* [Doc. 9-2 at 24–44], ALJ Earl W. Shaffer issued an unfavorable decision denying Plaintiff's request on April 17, 2015, [*id.* at 11–19].  The Appeals Council denied review of the ALJ's decision, [*id.* at 1–3], and Plaintiff appealed the decision to the United States District Court for the District of Colorado, [Doc. 9-9 at 780].  On March 22, 2018, the Honorable Philip A. Brimmer reversed the Commissioner's decision and remanded for further proceedings.  [*Id.* at 783–99]; *see also* [*D.G.P.*] *v. Berryhill*, No. 16-cv-02581-PAB, 2018 WL 1444204, at *7 (D. Colo. Mar. 22, 2018).

On remand, another hearing was held, this time before ALJ Kathryn D. Burgchardt. [Doc. 9-8 at 676–728].  ALJ Burgchardt issued another unfavorable decision denying benefits on July 16, 2019.  [*Id.* at 636–57].  The Appeals Council denied review, [*id.* at 626–29], and Plaintiff once again appealed the denial to this District, *see* [*D.G.P.*] *v. Saul*, No. 20-cv-02361-REB (D. Colo.).  In that second appeal, the Commissioner filed a motion

number associated with the Administrative Record, which is found in the bottom right-hand corner of each page.  For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

to remand the case, which the Honorable Robert E. Blackburn granted, reversing the Commissioner's decision and remanding for further proceedings on April 13, 2021. [Doc. 9-15 at 1565–66, 1572–73].

On December 5, 2022, ALJ Burgchardt denied Plaintiff's request for benefits. [Doc. 9-14 at 1465–84]. In her decision, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2014 and that she had not engaged in substantial gainful activity as of her alleged disability onset date of June 23, 2014. [*Id.* at 1468–69]. The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine (status post L4-5 oblique lateral lumbar interbody fusion with posterior spinal instrumented fusion); bilateral carpal tunnel syndrome (status post release surgery); and obesity. [*Id.* at 1469]. The ALJ concluded that these impairments "significantly limit the ability to perform basic work activities," but also concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations. [*Id.*].

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567,[4] with the following restrictions:

> [Plaintiff] can only lift or carry up to 10 pounds frequently and 20 pounds occasionally. She can stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday and sit with normal breaks for a total of 6 hours in an 8-hour workday. She could perform postural activities occasionally of climbing ramps and stairs, balancing, stooping, crouching, kneeling, and

---

[4] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, [the person] must have the ability to do substantially all of these activities." *Id.*

crawling. She should not climb any ladders, ropes, or scaffolds. She could perform pushing and pulling motions with the bilateral upper and lower extremities within the weight restrictions given. She could perform activities requiring bilateral manual dexterity for both gross and fine manipulations with handling and reaching; however, only frequent bilateral fine manipulation. She should avoid overhead reach bilaterally. She should avoid unprotected heights, moving machinery, vibrations, and extreme cold.

[*Id.* at 1470–71. The ALJ ultimately concluded that Plaintiff is "capable of performing [her] past relevant work as a traffic manager II (freight broker)" because "[t]his work does not require the performance of work-related activities precluded by [her] residual functional capacity," such that Plaintiff is not disabled under the Act. [*Id.* at 1482].

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 10, 2023, [*id.* at 1454–57], which rendered the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently sought judicial review of the Commissioner's decision in this District on September 6, 2023. [Doc. 1]. This matter is now ripe for consideration, and the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if she is insured, has not reached retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). In addition, SSI is available to an individual who is financially eligible,[5] files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382; 20 C.F.R. § 416.202. The earliest a claimant can receive SSI is the month following the month

---

[5] SSI is a needs-based program established for individuals with limited resources. *See* 20 C.F.R. § 416.110; *see also Ford v. Commissioner*, 816 F. App'x 276, 279 (10th Cir. 2020) (discussing the distinction between DIB and SSI).

within which the claimant filed her application, and thus the claimant must establish that she was disabled on or prior to her application date.  *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is disabled only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905(a). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. § 423(d)(2)(B); *id.* § 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

   5.  Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See id.* §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five.  *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

   In reviewing the Commissioner's decision, the Court limits its inquiry to whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards.  *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Flaherty*, 515 F.3d at 1070 (quotation omitted), and evidence is not substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's," *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016), but the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Flaherty*, 515 F.3d at 1070.

   Remand is also warranted where the ALJ fails to apply the correct legal standards or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir.

2005) (quotation omitted). But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

Plaintiff identifies two issues in the ALJ's decision that she argues warrant remand. According to Plaintiff, the ALJ failed to properly assess the opinions of Dr. Michael Brown and Dr. Stanford Varnado. [Doc. 11 at 4]. She then argues that if the Court finds reversible error, she is entitled to an immediate award of benefits versus a remand for another rehearing. [*Id.*].

## I.    Dr. Brown's Opinions

First, Plaintiff contends that the ALJ failed to properly weigh Dr. Brown's opinions in accordance with the Regulations in effect at the time she filed her applications. [*Id.* at 13]. She asserts that the ALJ failed to articulate specific, legitimate reasons for discounting or rejecting Dr. Brown's opinion about her limitations in standing, sitting, and walking and that the ALJ's bases for rejecting those opinions do not amount to the substantial evidence required to support the ALJ's finding. [*Id.* at 13–19].

Because Plaintiff filed her applications prior to March 27, 2017, an older version of the Regulations apply to her case and dictate that the ALJ will "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *see also Elfert v. Saul*, No. 19-cv-01985-WJM, 2020 WL 4199729, at *4 (D. Colo. July 22, 2020) (under the old Regulations, "all else being equal, the opinion of

an examining medical source should be given more weight than that of a non-examining medical source"). An examining source's opinion may still be discounted, but the decision to disregard or give little weight to an examining source's opinion "must be based on an evaluation of all of the factors set out in [20 C.F.R. § 404.1527(c)] and the ALJ must provide specific, legitimate reasons for rejecting" the opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted).

Dr. Brown examined Plaintiff on February 16, 2019, and in conjunction with his examination, provided opinions about Plaintiff's ability to perform work-related activities. [Doc. 9-13 at 1253, 1260–65]. Relevant here, Dr. Brown opined that Plaintiff can lift and carry up to 50 pounds occasionally (i.e., "very little to one-third of the time," *see* [*id.* at 1260]); can sit, stand, and walk up to three hours in one eight-hour workday; can occasionally climb stairs, ladders, ramps, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl, [*id.* at 1260–61, 1263]. He also opined that she could operate a motor vehicle "frequently," [*id.* at 1264], i.e., "one-third to two-thirds of the time," [*id.* at 1260].

The ALJ afforded Dr. Brown's opinions "minimal weight." [Doc. 9-14 at 1480]. First, the ALJ discounted Dr. Brown's opinion that Plaintiff can lift up to 50 pounds, finding that the opinion "seem[ed] excessive" given the "abnormal findings in [Plaintiff's] spine and in her wrists, fingers, and hands." [*Id.*]. Then, the ALJ stated that "the restrictions to no more than three hours of sitting, standing and walking are not supported by Dr. Brown[']s own findings or the other evidence through the date this opinion was formed." [*Id.*].

Plaintiff argues that the ALJ's stated reasons for discounting Dr. Brown's opinions about her limitations in sitting, standing, and walking "are not valid because they are not supported by substantial evidence."  [Doc. 11 at 15].  The Court addresses each in turn.

***Dr. Brown's Own Notes.***  First, the ALJ concluded that Dr. Brown's limitation opinions were "not supported by [his] own findings."  [Doc. 9-14 at 1480].  The ALJ found Dr. Brown's sitting, standing, and walking limitation opinions inconsistent with the fact that he had "noted only mild loss of cervical range of motion" and "noted normal hip range of motion."  [*Id.*]; *see also* [Doc. 9-13 at 1258].  The ALJ also mentioned that "[a]lthough [Dr. Brown] noted globally decreased range of motion in [Plaintiff's] lumbar spine with positive straight leg raising, he also noted good neurological function and strength," leading the ALJ to conclude that "there is conflicting evidence as to why the claimant may need to be so restricted in terms of sitting, standing and walking."  [Doc. 9-14 at 1480; Doc. 9-13 at 1258].

On appeal, Plaintiff contends that Dr. Brown's exam notes do not conflict with his opinions about her ability to sit, stand, and walk.  She asserts that there is no record evidence showing that a finding of good neurological function or good strength contradicts with Dr. Brown's findings of pain and decreased range of motion.  [Doc. 11 at 15–16].  In other words, Plaintiff argues that the ALJ found inconsistency where there was none.  [*Id.*].  According to Plaintiff, the ALJ improperly imposed her own medical expertise over that of Dr. Brown, as "the exam findings do not conflict with Dr. Brown's limitations."  [*Id.* at 15].

The Commissioner responds by simply reiterating the ALJ's decision, asserting that the ALJ reasonably assigned little weight to Dr. Brown's opinion because she "found

that [Dr. Brown's] observations of Plaintiff's good neurological functioning did not support such restrictive sitting, standing, and walking limitations."  [Doc. 12 at 16–17].

The Court cannot, and does not, reweigh the evidence that was before the ALJ. *Smith*, 821 F.3d at 1266.  However, the Court must ensure that the ALJ's findings are "link[ed] . . . closely with the evidence" and are not "conclusions in the guise of findings." *Keyes-Zachary*, 695 F.3d at 1172.  Moreover, while an ALJ can discount a medical opinion "if it is internally inconsistent or inconsistent with other evidence," *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007), "an ALJ cannot substitute her lay opinion for that of a medical professional," *Lax*, 489 F.3d at 1089, or "interpose [her] own 'medical expertise' over that of a physician," *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987).

The ALJ does not explain why Dr. Brown's notes about decreased range of motion versus function and strength are internally inconsistent or why the notes about Plaintiff's range of motion are inconsistent with Dr. Brown's opinions about D.G.P.'s ability to sit, stand, or walk for long periods of time.  This was error, both in that the ALJ failed to provide "specific, legitimate reasons for rejecting" Dr. Brown's opinion, *Chapo*, 682 F.3d at 1291, and because the ALJ essentially substitutes her own lay opinion for the medical opinion of Dr. Brown by relying on her own interpretation of the evidence.  *See Holgersen v. Commissioner*, No. 20-cv-00668-MSK, 2021 WL 2910655, at *9 (D. Colo. July 12, 2021) (finding error where the ALJ failed to explain how test results were inconsistent with the doctor's limitation opinions and concluding that the ALJ had improperly relied on his own lay opinion); *Glass v. Saul*, 537 F. Supp. 3d 1251, 1258–59 (D. Kan. 2021) (remanding where the ALJ did "not adequately explain how [the doctor's] medical records were inconsistent with his opinion"); *Arellano v. Astrue*, No. 11-cv-00752-RBJ, 2013 WL

1129479, at *5 (D. Colo. Mar. 18, 2013) ("The ALJ fails to explain how the medical evidence she listed is contradictory to Dr. Budnick's opinion, beyond her own lay opinion that the results are 'benign.'").

*Activities of Daily Living.* The ALJ also discounted Dr. Brown's opinion because it was inconsistent with Plaintiff's representations that she did yard work, helped her sister move, and "was able to do work that involved going up and down stairs." [Doc. 9-14 at 1480]. Plaintiff notes that the ALJ did not assess how much sitting, standing, or walking Plaintiff did while performing the listed activities and argues that, without that information, there is nothing plainly inconsistent between these activities and Dr. Brown's opinions. [*Id.* at 16–18]. And as Plaintiff points out, the Appeals Council's remand order, which came after the Commissioner's motion to remand was granted, recognized this same deficiency in the ALJ's prior order. [*Id.* at 17–18]. For additional background, in the second administrative decision, the ALJ discounted Dr. Brown's standing, sitting, and walking opinions because they were "inconsistent with the claimant's activities of daily living and the fact that she was able to drive 180 miles one-way to the hearing without assistance." [Doc. 9-8 at 653]. In its remand order, the Appeals Council stated:

> [I]t is unclear if the claimant's activities of daily living, as discussed in the decision, are inconsistent with Dr. Brown's opinion. Specifically, the decision summarizes the claimant's activities of daily living, which involved taking care of her husband while he was still living, including cooking, cleaning, taking him to doctor appointments, and sometimes helping him shower, as well as performing self-care activities, driving, shopping, cleaning, and cooking simple meals (Decision, page 7). These types of activities are significant, but it is unclear how long they were performed daily or if the claimant took significant breaks when performing them, and therefore without further information they do not directly conflict with Dr. Brown's opined sit, stand and walk limitations.
>
> . . .

> Therefore, the Administrative Law Judge does not provide sufficient rationale in support of discounting the sitting, standing, and walking limitations opined by Dr. Brown. This is a material issue, because the sitting, standing, and walking limitations opined by Dr. Brown conflict with the requirements of the jobs identified at steps four and five of the sequential evaluation process. Thus, further consideration of Dr. Brown's opinion is necessary.

> Upon remand, the Administrative Law Judge will . . . [g]ive further consideration to the opinion of Dr. Brown pursuant to 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence.

[Doc. 9-15 at 1576–77]. Plaintiff argues that the ALJ repeated that same error here. [Doc. 11 at 18].

The Commissioner responds first by citing to various portions of the record which he believes demonstrate Plaintiff's "significant physical activities" and arguing that these activities "suggest that Plaintiff had greater sitting, standing, and walking abilities than Dr. Brown opined." [Doc. 12 at 18].[6] He argues that "Plaintiff's argument that the ALJ did not comply with the Appeals Council's remand order when discussing Plaintiff's activities is not persuasive" because the ALJ "provided a completely different analysis of Dr. Brown's opinion on remand, and significantly expanded on her discussion of Plaintiff's specific activities." [*Id.* at 18–19].

The ALJ's discussion of Plaintiff's yard work, use of stairs, and assistance in moving her sister in the context of Dr. Brown's opinion does not include record citations, *see* [Doc. 9-14 at 1480], but elsewhere in her decision, the ALJ cites evidence to support her findings that Plaintiff "had been doing things such as cleaning up her yard and building

---

[6] Some of these bases were not cited by the ALJ in support of her weighing of Dr. Brown's opinion, and because the "[j]udicial review is limited to the reasons stated in the ALJ's decision," *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008), the Court does not consider any new supporting rationale asserted by the Commissioner on appeal.

which required heavy lifting" and had "admitted to being able to help her sister move things into a storage building," [*id.* at 1475–76]. Specifically, treatment notes from May 24, 2018 indicate that Plaintiff reported that she had "been moving with [her] sister, and moving things to [a] storage [building]," [Doc. 9-13 at 1103], though this evidence does not necessarily establish that this conduct "required heavy lifting" like the ALJ stated, [Doc. 9-14 at 1480]. Treatment notes from August 29, 2019 show Plaintiff's reports that she was "more active as of late" and was "having to clean up her yard as well as a building which she is requiring heavy lifting [sic]." [Doc. 9-19 at 2028, 2030]. And finally, the ALJ relied on notes indicating that Plaintiff was using stairs while working, [Doc. 9-14 at 1109], although the ALJ notably does not mention that these same notes state that Plaintiff "comes in hurting more, due to walking up and down stairs for[ ]her work" and that Plaintiff's functional limitations and aggravating factors were listed as "prolonged stand or sit," [*id.*].

While the ALJ may have technically complied with the Appeals Council's directive to "[g]ive further consideration to the opinion of Dr. Brown," *see* [Doc. 9-15 at 1577], the most recent decision contains the same deficiencies identified in the Council's remand order. *Cf. Noreja v. Commissioner*, 952 F.3d 1172, 1178, 1180 (10th Cir. 2020) (holding that a court has authority to review an ALJ's compliance with an Appeals Council remand order and explaining that failure to follow the order "may or may not render the ALJ's decision legally or factually insupportable under 42 U.S.C. § 405(g)"). As Plaintiff points out, there is no discussion in the ALJ's decision about how long Plaintiff could or did perform the listed activities, and there is no clear explanation as to why these activities contradict Dr. Brown's opinions that Plaintiff could stand for three hours in a day, sit for

three hours in a day, or walk for three hours in a day.  There is nothing inherently inconsistent, for example, between using a staircase or performing yard work and Dr. Brown's opinions.  Without this information or explanation, the Court cannot meaningfully track how the ALJ reached her finding of inconsistency.  *Keyes-Zachary*, 695 F.3d at 1166.

Because the ALJ failed to adequately explain why she found an inconsistency between Plaintiff's daily activities and Dr. Brown's opinion, even after the deficiency was pointed out by the Appeals Council, the Court concludes that Plaintiff's daily activities do not constitute substantial evidence supporting the ALJ's decision.  *See Willingham v. Berryhill*, No. 5:17-cv-01010-HE, 2018 WL 2422762, at *7 (W.D. Okla. May 29, 2018) (ALJ erred in discounting medical opinion due to plaintiff's activity, as the activity (using a riding lawn mower) was "not necessarily inconsistent with [the] opinion, especially where the record does not contain any indication of the length of time [the p]laintiff sits upon the riding lawn mower at one time, nor how frequently he performs this activity"); *Paris v. Saul*, No. 6:18-cv-01325-KHV-GEB, 2019 WL 4241125, at *5 (D. Kan. Sept. 6, 2019) (remanding case where the ALJ "did not adequately explain how [the] plaintiff's daily activities were inconsistent with [the medical source's] opinion" and therefore did not give "good reasons" for assigning little weight to the opinion); *cf. Daley v. Barnhart*, No. 2:02-cv-02542-KHV, 2003 WL 22327186, at *9 (D. Kan. Oct. 9, 2003) ("Plaintiff's activities were somewhat extensive, but absent explanation by the ALJ, the Court cannot conclude that such activities were inconsistent with the specific limitations which Dr. Stevenson identified on the medical source statement.").

**Driving.** Finally, Plaintiff challenges the ALJ's conclusion that Dr. Brown's limitation opinions should be discounted because "[t]he claimant repeatedly admitted to being able to drive after onset, which is also contrary to the driving restriction he noted." [Doc. 9-14 at 1480]. Plaintiff argues that this rationale fails to support the ALJ's conclusion because there is no evidence in the record that contradicts Dr. Brown's opinion. [Doc. 11 at 18]. Plaintiff again directs the Court to the Appeals Council's remand order, which specifically called out a lack of support for the ALJ's then-conclusion that Plaintiff's driving activity contradicted—and was a reason for discounting—Dr. Brown's opinions:

> [I]t [is] unclear if the claimant's ability to drive 180 miles to the hearing without assistance conflicts with Dr. Brown's opinion. Specifically, the claimant testified that she drove 180 miles to the hearing, but also testified that she stopped four times to take breaks (June 2019 Hearing Transcript, page 32), which appears to indicate that she took breaks more frequently than every two hours, as allowed in a normal 8-hour workday (See Social Security 96-9p).

[Doc. 9-15 at 1577]; *see also* [Doc. 11 at 18–19]. Plaintiff argues that the ALJ repeated this same error again in her most recent decision because she did not explain the perceived inconsistency. [Doc. 11 at 19]. The Commissioner does not directly respond to this argument, arguing only that Plaintiff's argument is "not persuasive" because the ALJ "explained how Plaintiff's repeated reports of regular driving were not entirely consistent with Dr. Brown's limitation in that area, in contrast to [the ALJ's] previous discussion that focused on Plaintiff's drive to the hearing." [Doc. 12 at 18–19].

The problem with the Commissioner's argument is that the ALJ *did not* explain how Plaintiff's reports of driving contradicted Dr. Brown's opinions. The ALJ's statement that Plaintiff "repeatedly admitted to being able to drive" is not supported by a citation to record evidence, nor are the other references to driving in ALJ's decision supported by any

record citations.  *See, e.g.*, [Doc. 9-14 at 1471, 1477, 1480].  The ALJ does not cite to or discuss any evidence demonstrating how frequently or for how long Plaintiff drives, nor does she explain how Plaintiff "being able to drive" after the onset of her symptoms is inconsistent with the limitations assessed by Dr. Brown.  *See generally* [*id.* at 1465–84].  The fact that the ALJ changed her rationale, but still did not support or explain that rationale, does not remedy the error pointed out in the Appeals Council's order or provide a legitimate basis to reject Dr. Brown's opinions.  *See Landon B. v. Kijakazi*, No. 2:21-cv-00217-DAO, 2022 WL 4365953, at *6 (D. Utah Sept. 21, 2022) ("The ALJ also noted Mr. B. was able to drive but, again, did not explain how this was inconsistent with Mr. B.'s assessed limitations or otherwise relevant to Mr. Lovelace's opinion.  Without further explanation, these rationales do not provide valid bases for rejecting Mr. Lovelace's opinion.").

In sum, the Court cannot conclude that the ALJ gave adequate "specific, legitimate reasons for rejecting" Dr. Brown's opinions.  *Chapo*, 682 F.3d at 1291.  As a result, this portion of her decision is not supported by substantial evidence, and remand is appropriate.

## II.    Dr. Varnado's Opinions

The Court finds that the above analysis is a sufficient basis to warrant remand. However, because Plaintiff asks for an immediate award of benefits instead of a rehearing, the Court finds it appropriate to fully evaluate the ALJ's decision and address Plaintiff's second argument of error.

Plaintiff asserts that the ALJ failed to appropriately consider the opinions of Dr. Varnado, a treating physician.  [Doc. 11 at 19–28].  Dr. Varnado opined that Plaintiff (1) is

limited to sedentary activity, (2) cannot lift or type "anything," (3) needs to change positions every 15 to 30 minutes, and (4) needs an opportunity to lie down, if needed. [Doc. 9-7 at 269–70]. He opined that the estimated length of Plaintiff's disability is "lifetime." [*Id.* at 269]. The ALJ recognized that Dr. Varnado is a treating source but gave his opinion "little weight" because "the severity of restriction given to 'lifetime' was rendered without the benefit of diagnostic x-rays" and because the opinion was inconsistent with other record evidence. [Doc. 9-14 at 1478–79]. After listing a number of medical records that she believed showed this inconsistency, the ALJ concluded that little weight was warranted "given the contrary evidence identified above within the treatment history and the claimant's report of activities of daily living as identified above and return to some work activities." [*Id.* at 1479].

Plaintiff argues that the ALJ failed to apply the two-step process required by the applicable Social Security Regulations. [Doc. 11 at 21]. The old Regulations provide that if the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the opinion is not given controlling weight, the ALJ must apply a number of factors to determine the weight of the opinion, including:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii); 416.927(c)(2)(i)–(ii).

According to Plaintiff, the ALJ erred because she "did not assess the length of the treatment relationship, the frequency of examination, the treatment provided, or the kind of examination or testing performed" and instead only "assessed [Dr. Varnado's] opinion against a list of things." [Doc. 11 at 21]. The Commissioner counters that Plaintiff's argument is "unfounded" because the ALJ "recognized that Dr. Varnado was a treating source and provided a detailed discussion of his treatment notes, both before and during the relevant period." [Doc. 12 at 20]. For the Commissioner, this means that "the ALJ was clearly aware of Dr. Varnado's history with the Plaintiff," and because the ALJ was not required to *expressly* apply all of the factors set forth in the Regulations, there was no error here. [*Id.*].

While the ALJ is not required to expressly discuss each factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), "the record must reflect that the ALJ *considered* every factor in the weight calculation," *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the opinion and the reasons for that weight." *Id*.

The Court is respectfully unpersuaded by the Commissioner's argument that the ALJ must have considered all of the relevant factors because she was "clearly aware" of the nature and length of the relationship between Dr. Varnado and Plaintiff. The Court cannot "simply presume the ALJ applied the correct legal standards in considering Dr. [Varnado's] opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The

ALJ did not discuss—and it is not clear to the Court that she considered—the length of Plaintiff's treatment relationship with Dr. Varnado, the frequency of examination, or the nature and extent of the treatment relationship.  Moreover, while the ALJ appeared to consider the factors of supportability and consistency, she did so by focusing only on parts of the record she believed were inconsistent with Dr. Varnado's limitations opinions and citing almost exclusively to treatment notes from Dr. Varnado.  *See* [Doc. 9-14 at 1478–79; Doc. 9-7 at 382–83, 391–92, 395, 405].[7]  This makes it unclear whether the ALJ considered if Dr. Varnado's opinions were consistent with the record "*as a whole*," as required.  *Langley*, 373 F.3d at 1119 (emphasis added).

Accordingly, the record does not demonstrate that the ALJ considered all of the relevant factors.[8]  *Andersen*, 319 F. App'x at 718; *cf. Rhodes v. Commissioner*, No. 6:18-cv-00329-SPS, 2020 WL 1066336, at *3 (E.D. Okla. Mar. 5, 2020) (concluding that ignoring medical evidence that was consistent with doctor's opinion and instead focusing only on inconsistent evidence "indicates a failure to conduct the proper analysis").  This

---

[7] The ALJ cites to other providers' treatment notes for the proposition that Plaintiff was "doing well" after a November 2012 surgery, that an April 2013 x-ray showed "no evidence of intercarpal instability, fracture, or dislocation," and that Plaintiff was self-employed and walked three times per week.  [Doc. 9-14 at 1479 (citing [Doc. 9-7 at 417, 422, 427])].

[8] Plaintiff also challenges the specific bases the ALJ gave for her conclusion that Dr. Varnado's opinion was inconsistent with the record, including arguing that some of the reasons were speculative, unexplained, or cherry-picked.  [Doc. 11 at 23–27].  The Court need not and does not address all of these arguments, but does agree with Plaintiff that some of the rationales appear to be impermissibly speculative.  *See, e.g.*, [Doc. 9-14 at 1479 (finding that Dr. Varnado's opinion was "inconsistent with [his] subsequent treatment in February 2014, after x-ray results, and decision to continue with 'conservative care' and no referral to neurosurgery for the claimant's lumbar degenerative condition"); *see also Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations."); *Lax*, 489 F.3d at 1089 (an ALJ "cannot substitute her lay opinion for that of a medical professional").

provides an additional basis to reverse the Commissioner's decision.  *See* [*D.G.P.*], 2018 WL 1444204, at *5 ("Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal.").

### III.    Immediate Award of Benefits

Plaintiff argues that the Court should order an immediate award of benefits instead of remanding the case for the third time.  [Doc. 11 at 28].  The Commissioner disagrees, asserting that under Supreme Court precedent, courts are generally required "to remand to the agency for additional investigation or explanation."  [Doc. 12 at 23 (quoting *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002))].  Defendant contends that an award of benefits is appropriate only if additional fact finding would not serve any purpose, such as if the record "fully supports" that the claimant is disabled.  [*Id.* (quoting *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989))].

The Court is respectfully unpersuaded by the Commissioner's argument.   The Supreme Court stated in *Ventura* that, pursuant to "the basic legal principles that govern remand," "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."   *Ventura*, 537 U.S. at 16 (quotation omitted).   Even so, Congress has expressly granted federal district courts the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing*."   42 U.S.C.§ 405(g) (emphasis added).   The Court concludes that this case falls within the rare subset of cases in which an award of immediate benefits is warranted.

The Court has discretion to immediately award benefits instead of remanding for further proceedings. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). "Some of the relevant factors [courts] consider are the length of time the matter has been pending" and "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Id.* (cleaned up).

D.P.G. initially applied for benefits on August 26, 2013—she was 49 years old when she first applied for benefits and is 60 years old now. *See* [Doc. 9-5 at 129 (listing Plaintiff's birthday)]. Her applications have been in limbo for over eleven years. In that time, Plaintiff has been through three administrative hearings and the Commissioner has issued three administrative decisions. This order will mark the third remand from a court in this District—from three different judicial officers. All of these circumstances weigh in favor of remanding for an immediate award of benefits. *See Romero v. Kijakazi*, No. 22-cv-01237-MDB, 2023 WL 4545158, at *5 (D. Colo. July 7, 2023) ("[T]hirteen years and four appeals after Plaintiff first sought disability benefits, this Court is unwilling to again extend Plaintiff's wait while the Commissioner again attempts to satisfy its evidentiary burden; Plaintiff is entitled to an immediate award of benefits."); *Nurre v. Saul*, No. 19-cv-03429-CMA, 2021 WL 1037893, at *4 (D. Colo. Mar. 18, 2021) ("Given that more than a decade has passed since Plaintiff first applied for disability benefits, the Court finds that further proceedings would be inappropriate and unfairly prejudicial to Plaintiff."); *Huffman v. Astrue*, 290 F. App'x 87, 89–90 (10th Cir. 2008) (remanding for an immediate award of benefits where six years had passed since the claimant applied for benefits and the case had already been reversed and remanded once).

The Court must also consider whether additional fact-finding would serve any useful purpose. *Salazar*, 468 F.3d at 626. The Court sees no utility in remanding the case for a fourth rehearing. After the Commissioner's voluntary remand, the Appeals Council expressly identified an issue in the ALJ's weighing of Dr. Brown's opinions regarding Plaintiff's limitations in standing, sitting, and walking—that the ALJ's reliance on Plaintiff's activities of daily living and driving was problematic because there was insufficient information or analysis addressing the scope of those activities or explaining why those activities were inconsistent with Dr. Brown's opinions. [Doc. 9-15 at 1576–77]. The ALJ amended her analysis in her subsequent decision, but still did not adequately explain her findings. As for Dr. Varnado, Judge Brimmer remanded this case in 2018 upon concluding that the ALJ failed to provide a sufficient basis for discounting the doctor's opinions and because the ALJ had improperly substituted in her own lay judgment for that of the doctor. *See* [*D.G.P.*], 2018 WL 1444204, at *5–6. On remand, the ALJ provided an insufficient explanation for her rejection of Dr. Varnado's opinion and improperly substituted in her own lay judgment for that of a medical provider.

The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion." *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (quotation omitted). The Commissioner has not corrected identified errors despite ample opportunities to do so, and the factual record is not likely to change due to new information. Accordingly, additional fact-finding would not serve any useful purpose and remanding for an award of benefits is appropriate. *See Donna F. P. v. O'Malley*, No. 1:23-cv-00422-JB-LF, 2024 WL 3725633, at *4 (D.N.M. July 15, 2024) (recommending

remanding for an immediate award of benefits where "the ALJ failed to properly evaluate the opinion of [a] physician . . . despite an explicit instruction to do so"), *report and recommendation adopted*, 2024 WL 4002869 (D.N.M. Aug. 30, 2024); *Nurre*, 2021 WL 1037893, at *4 (awarding benefits where the Commissioner repeated the same error after remand, as there was "no reason to believe that additional proceedings would cure the error" that was not addressed in two prior remands).

### CONCLUSION

For the reasons set forth in this order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED** to the Commissioner for an award of immediate benefits to Plaintiff D.G.P.

DATED:  September 24, 2024                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge